### MORGAN and others *v.* COX and others.

*(Circuit Court, W. D. Texas.  1886.)*

1. EVIDENCE—RECORD OF DEED—ACKNOWLEDGMENT—NOTARIAL SEAL.

    The record of a deed that recites that the notary public who took the acknowledgment had no proper seal, and used a private seal, is admissible in evidence in Texas.

2. SAME—DEED OFFERED IN EVIDENCE FOR ONE PURPOSE IN EVIDENCE FOR ALL PURPOSES.

    Where plaintiff offers a deed on which his opponent relies as evidence of his title, in evidence, for the purpose of showing that such deed is a forgery, if the evidence fails to show that it is a forgery, it is in evidence for all purposes for which it could be used, and defendant may take advantage of it.

At Law.

TURNER, J.   This is a suit by the plaintiffs, as heirs at law of Charles Morgan, deceased, for one league and labor of land situate in Llano county.   The patent bears date December, A. D. 1848, survey No. 509, by virtue of certificate No. 493.   The grantee, Charles Morgan, died February 14, 1847.   The suit is in the usual form in trespass to try title,—petition filed July 15, 1885.   The defendants filed their first answer, August 9, 1885, and their amended original answer, February 12, 1886.   In this amendment they pleaded not guilty of the wrongs, etc., and the statute of limitations of five and ten years.   They also pleaded valuable improvements in good faith. The same day, February 12, 1885, after defendants' amendment was filed, plaintiffs filed their first supplemental petition.

The defendants claim title as follows:   (1)  By virtue of an apparent transfer of the certificate No. 493, (by virtue of which the patent issued to Charles Morgan, as the assignee thereof,) from Charles Morgan, plaintiffs' ancestor, to one T. S. Milford; and (2) a transfer from the said T. S. Milford to one R. W. Nelson; (3) and from R. W. Nelson to Euceba Moore, wife of Nat. Moore.   Under Moore and wife all the defendants claim.

In the plaintiffs' supplemental petition they plead, among other things, that if defendants do hold possession of the various portions of said league and labor, they each hold under and deraign their title under, through, and by virtue of, a forged transfer, from the grantee to one T. S. Milford, of the said certificate No. 493, by virtue of which the land was patented.   An affidavit was also filed by the plaintiff on the twelfth day of February, 1886, stating that the affiant (one of the plaintiffs) believed the transfer from Charles Morgan to Thomas S. Milford was and is a forgery.   Thus the pleadings stood when the parties proceeded to trial.

The plaintiffs proved themselves the heirs at law of Charles Morgan, deceased, and then introduced a certified copy of the patent to Charles Morgan for the land in controversy, and here the plaintiffs rested their case.   The defendants then offered in evidence a deed from R. W. Nelson to Euceba Moore, (who was and is wife of Nat. Moore.)   This deed is for the entire league and labor sued for, and bears date the twentieth day of January, 1875.   Objections were made to the introduction of this deed, on account of want of a proper seal used by the notary public; and to the certificate of registration, because the certificate recites that the officer has no seal, and therefore uses a private seal.   I think these objections untenable, and that the same was properly of record in 1875.   It is under and through this deed that all the defendants deraign their titles; but, be that as it may, certain it is that the plea of limitations of five years, under the conditions prescribed by the statute, would have protected some of the defendants.   But whether this be so is not, as I apprehend, of importance, as the finding of the jury cuts off all right to recover, if the same shall be permitted to stand.

After the defendants had offered their evidence of possession and of improvements, plaintiffs were unwilling to risk their case upon the objections made to the introduction of many of the deeds under which defendants claimed. I should have stated, however, that the defendants rested their case after introducing their deeds, and evidence of use and occupation, payment of taxes, etc. The plaintiffs, I say, seemed unwilling to trust the case in that condition, and plaintiffs then offered in evidence the transfer which they had declared a forgery, viz., a purported transfer from Charles Morgan to T. S. Milford to the certificate, and then offered in evidence a transfer from T. S. Milford to Robert W. Nelson, no objection being made to the introduction of the same by the defendants; the plaintiffs asserting that they introduced the same in order to show that the same was a forgery, and if that were established, it precluded the defendants from all benefit of the five years limitation. This transfer or purported transfer from Charles Morgan to Milford bears date, or rather the acknowledgment bears date, the sixth day of November, 1840; and was taken by Thomas Harvey, notary public. There is nothing on its face indicating that the same is not valid, and the evidence showed that Harvey was a notary in Matagorda county when the acknowledgment purports to have been taken. The transfer from Milford to Nelson bears date the eighteenth day of October, 1850, acknowledged before S. W. PERKINS, chief justice of Brazoria county. I have before stated that R. W. Nelson deeded the same to Mrs. Nat. Moore, January 20, 1875. It thus appears that, if the deed from Charles Morgan to Milford was and is a genuine deed, the plaintiffs have no interest in the land, and that the defendants have a regular chain of title, from and under the sovereignty, of the soil, as, under our statute, the patent to the land, although to Charles Morgan, inures to the benefit of his assignees.

As I. stated, the plaintiffs themselves offered in evidence the transfer from Charles Morgan to Milford, and no objection was made to its introduction by the defendants. The plaintiffs, being advised of the existence of this transfer, filed an affidavit stating that the same was believed to be a forgery. This affidavit precluded the defendants from introducing the same in evidence without establishing its genuineness. It may well be understood how difficult it would be for the defendants to prove that fact in the mode required by the common law. The defendants, therefore, without attempting this arduous task, saw fit to rest their case upon the proofs adduced by them of possession, use, and occupation under their deeds. It is believed that when the plaintiffs saw fit to put the same, i. e., the transfer from Morgan, in evidence, that it was too late for them to assert that the same was not there for all legal purposes; and the defendants, in order to claim the benefits thereof, were relieved from proving such facts as would have been necessary for them to have shown in order to establish it as an ancient document. The force of the argument,

and the application of the authorities, produced by plaintiffs, in order to sustain and establish as valid an instrument bearing date 30 years ago and upwards, is recognized, but it is believed that those rules can have no bearing in this case, as the plaintiffs themselves offered the same, and no objection was made by the defendants, and after the same was put in evidence by the plaintiffs it was too late for them to say that it was not properly in evidence for all legal purposes. It is true that plaintiff said they introduced it to show that the same was a forgery,—to deprive the defendants of the benefits of the laws of limitation of five years. It is not believed, however, that the plaintiffs could occupy the position of having placed the same in evidence with a view to show the same to be a forgery; and, failing in that, that something more must be shown by the defendants in order to avail themselves of it in showing title out of plaintiffs and in them. The plaintiffs took the hazard, when they put the same in evidence, of establishing its forgery, or of giving the defendants the full benefit thereof in establishing their title. If this be true, then, as the jury say by their verdict that the evidence fails to satisfy them that the same is a forgery, of course the plaintiffs inherited nothing, so far as this tract of land is concerned, and the verdict must stand, if the charge by the court was correct, viz.: That, as the plaintiffs had put the transfer in evidence, after having asserted the same was a forgery, the burden of proof was upon the plaintiffs to satisfy the jury that it was so.

There are many facts and circumstances that tend to the conclusion that the same is genuine: (1) Its age; (2) there is nothing upon its face to cast suspicion upon its validity; (3) the acknowledgment was taken before a person shown to have been a notary public; (4) the evidence shows that when the transfer from Nelson to Mrs. Moore was made, this transfer was passed into Mrs. Moore's hands. At all events the evidence is that when A. H. Cox, one of the defendants, purchased of Moore and wife, the transfer from Morgan to Milford, the transfer from Milford to Nelson, the transfer from Nelson to Mrs. Moore, together with the patent for the land, were respectively exhibited to him (Cox) by Moore and wife. Again, one of the paintiffs (and the only plaintiff who was a witness) testified that they had no knowledge of any claim they had in these lands, and never were advised of it until a land agent of the city of Austin advised them of it, and offered to bear all the expenses of the trial for the one-half of what might be recovered. True, this plaintiff produced in evidence what was denominated a will, which he said bore the genuine signature of Charles Morgan, and he gave it as his opinion that he did not think the signature to the transfer genuine. And Mr. R. Fisher was placed on the stand, and by comparing the signature to the transfer with that to the will, said he did not think they were written by the same person. The jury had both signatures before them, as well as the evidence referred to, and were not satisfied of the alleged forgery. These signatures are both written with a tremulous hand, and I am unable

to discover the disparity spoken of by the expert Fisher. The signatures are both written in small letters, the one to the will in full length, "Charles Morgan." If it was the uniform custom of Mr. Morgan to write his name in full, (about which there is, however, no evidence,) a person who undertook to counterfeit would hardly have abbreviated the first name. The similarity to my mind, however, is such that I feel confident that it is really genuine, or that the person imitating had knowledge of the real, true signature of Mr. Morgan.

The rule is that he who affirms a fact has the burden upon himself of proving that fact. The plaintiffs affirmed the forgery, and attempted to establish it. In this the jury have said they have failed, and the plaintiffs now affirm that the defendants should have been charged with the burden of showing its genuineness before they could avail themselves of the benefit of the transfer. I cannot subscribe to the doctrine. It appears to me that the plaintiffs, in order to avoid the effect of the statute of limitations of five years, erected a target. Upon their ability to demolish the same they trusted their case; and, having failed in that, their right to recover was demolished, rather than the target.

For the reasons above stated I decline to disturb the verdict. My views being correct, I deem it unnecessary and unimportant to discuss whether any errors were committed in the introduction of other evidence, as the view taken shows that the plaintiffs never had any right of action at all.